IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DAVID J. WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 14-1418-SLR |
| | ) | |
| ROBERT J. IRWIN, STEVEN FLICKER, | ) | |
| MIKE TIGUE, G.R. JOHNSON, and | ) | |
| JANET DURKEE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Julianne E. Murray, Esquire of MurrayPhillips, P.A., Georgetown, Delaware. Counsel for Plaintiff.

Stuart B. Drowos, Esquire and Roopa Sabesan, Esquire, Deputy Attorneys General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

Dated: July 8, 2015
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff David J. White ("plaintiff") brought this action alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983, and raising supplemental state claims arising from investigations by the Delaware Department of Justice ("DOJ") and the Delaware Department of Correction ("DOC") into suspicions that plaintiff possessed child pornography. (D.I. 1, ex. 1) Plaintiff filed his complaint in the Delaware Superior Court on October 9, 2014. (*Id.*) Defendants removed the action to this court on November 18, 2014. (D.I. 1) Presently before the court is defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367 and 1441.

## II. BACKGROUND

### A. The Parties

Plaintiff was employed by the DOC from January 24, 2003 to February 15, 2012. Defendant Robert Irwin ("Irwin") is a special investigator at the DOJ. Defendants Steven Flicker ("Flicker") and Mike Tigue ("Tigue") are investigators in the DOC Internal Affairs department. Defendant G. R. Johnson ("Johnson") is the warden of Sussex Correctional Institution, the DOC facility where plaintiff was employed. Defendant Janet Durkee ("Durkee") is the DOC's Director of Human Resources.

### B. The DOJ Investigation

On September 19, 2012, Irwin and Delaware State Police Detective Kevin McKay visited plaintiff's home to investigate a report of illegal online activity at plaintiff's address. (D.I. 1, ex. 1 at ¶ 8) Irwin told plaintiff he was investigating a complaint filed by an internet service provider. (*Id.*) Plaintiff allowed the investigators to search his

home for the purpose of confirming plaintiff's assertions that there were no computers in the house and that the house was not equipped with internet accessibility. (*Id.* at ¶¶ 11-12) Plaintiff alleges that, although Irwin never stated that plaintiff was under investigation for criminal activity (*Id.* at ¶ 13), Irwin nonetheless threatened to report the investigation to the DOC if plaintiff did not admit to wrongdoing or name another person or persons who were responsible (*Id.* at ¶ 16). The following day, September 20, 2012, Irwin composed an "Initial Crime Report" describing the interview and search. (*Id.* at ¶ 14) Plaintiff alleges that the report contained several inaccuracies. Irwin wrote that he discussed with plaintiff the suspension of plaintiff's online account, the description of an image of child pornography, and plaintiff's memory of the alleged image, but plaintiff alleges these subjects were not discussed. (*Id.*) The crime report allegedly states that the DOJ closed its investigation of plaintiff for lack of physical evidence and that Irwin referred the matter to the DOC Internal Affairs investigators. (*Id.* at ¶¶ 17-18)

### C. The DOC Internal Affairs Investigation

Plaintiff alleges that Irwin informed Ronnie Drake ("Drake"), Director of the DOC Internal Affairs Unit, of the DOJ investigation on October 2, 2012. (*Id.* at ¶ 19) Plaintiff further alleges that Irwin misrepresented the status of the DOJ investigation as ongoing, and that Drake assigned the matter to Flicker for internal investigation by DOC. (*Id.*) Flicker and Tigue interviewed plaintiff on October 11, 2012. (*Id.* at ¶ 22) Plaintiff told the investigators that he had not reported the interview with Irwin to the DOC because Irwin never told plaintiff that he was under investigation. (*Id.* at ¶ 24). Tigue told plaintiff that DOC policy required DOC employees to report any contact with police to the DOC. (*Id.*) Plaintiff alleges that this interview marked the first time he became aware that Irwin

2

acted on his threat to reveal the DOJ investigation to the DOC. (*Id.* at ¶ 23) Flicker instructed plaintiff to produce cellular telephone records for the period from April 1, 2012 to July 30, 2012. (*Id.* at ¶ 28) Under the advice of counsel, plaintiff did not comply with this request. (*Id.* at ¶ 29)

Johnson formally notified plaintiff that he was under investigation by the DOC through a memorandum dated November 13, 2012. (*Id.* at ¶ 31) At a meeting on November 13, 2012 between plaintiff, Johnson, and a union representative, Johnson suggested that plaintiff had violated DOC Policy Number 9.6 by failing to notify the DOC of the DOJ investigation. (*Id.* at ¶ 32) DOC Policy Number 9.6 states: "Employees must report, in writing, all police contact where the employee is the subject of a criminal investigation . . . to their supervisor within five (5) working days following the event." (*Id.* at ¶ 25) Johnson told plaintiff that the infraction would be overlooked if plaintiff complied with the DOC investigators' request for records. (*Id.* at ¶ 32) The DOC suspended plaintiff without pay on December 4, 2012 for his failure to comply with the request and for his violation of Policy Number 9.6. (*Id.* at ¶ 33) Johnson recommended plaintiff's termination in a memorandum to Bureau Chief Mike DeLoy dated January 2, 2013. (*Id.* at ¶ 34) Plaintiff was notified on February 12, 2013, that DOC would terminate his employment effective February 15, 2013. (*Id.* at ¶ 36)

### D. The Claims[1]

Plaintiff brought claims under 42 U.S.C. § 1983 against Irwin with respect to the DOJ investigation (count I) and against Flicker, Tigue, Johnson, and Durkee (collectively, "the DOC defendants") with respect to the DOC investigation and plaintiff's

---

[1] The court adopts the numeration of counts as designated in the complaint. Plaintiff did not designate any claim as "count III."

3

subsequent discipline and termination (count II). Plaintiff additionally asserted against Irwin claims for abuse of process (count IV) and defamation (count V), and against the DOC defendants a claim for breach of the implied covenant of good faith and fair dealing (count VI).

## III. STANDARD OF REVIEW

A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint's factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)). Consistent with the Supreme Court's rulings in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Third Circuit requires a two-part analysis when reviewing a Rule 12(b)(6) motion. *Edwards v. A.H. Cornell & Son, Inc.*, 610 F.3d 217, 219 (3d Cir. 2010); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, a court should separate the factual and legal elements of a claim, accepting the facts and disregarding the legal conclusions. *Fowler*, 578 F.3d. at 210–11. Second, a court should determine whether the remaining well-pled facts sufficiently show that the plaintiff "has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). As part of the analysis, a court must accept all well-pleaded factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

4

In this regard, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384–85 n.2 (3d Cir. 1994).

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663–64.

## IV. DISCUSSION

### A. 42 U.S.C. § 1983 Claims (Counts I and II)

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988). "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "The Third Circuit has held that a

5

civil rights complaint is adequate where it states the conduct, time, place, and persons responsible." *Id.* (citing *Boykins v. Ambridge Area Sch. Dist.,* 621 F.2d 75, 80 (3d Cir. 1980)); *see also Knight v. Carmike Cinemas,* 2011 WL 3665379, at *4 (D. Del. Aug. 22, 2011) (quoting *Colburn v. Upper Darby Twp.,* 838 F.2d 663, 666 (3d Cir. 1988)) ("Under Third Circuit precedent, a § 1983 claim will survive a motion to dismiss under Rule 12(b)(6) if it 'allege[s] the specific conduct violating the plaintiff's rights, the time and place of the conduct, and the identity of the responsible officials.'").

There is no dispute that all defendants are state actors. Plaintiff identifies with specificity the responsible government officials and the time and place of the complained-of conduct. Taking these allegations as true, the court reviews only "the initial question in any § 1983 inquiry [of] whether the plaintiff has 'alleged a deprivation of a constitutional right at all.'" *Knight,* 2011 WL 3665379, at *4 (citations omitted).

### 1. Privileges and Immunities claim (against Irwin)

The Constitution provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2, cl. 1. The purpose of the Privilege and Immunities Clause is to "plac[e] the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned." *McBurney v. Young,* ___ U.S. ___, 133 S. Ct. 1709, 1714 (2013) (citation and quotation omitted). The complaint states that "Irwin deprived plaintiff of his rights, privileges and immunities secured by the U.S. Constitution" by attempting, through threats, to expose the DOJ investigation to the DOC in order to coerce plaintiff to reveal information. (D.I. 1, ex. 1 at ¶ 42) Having not alleged any facts leading to the plausible inference that plaintiff's state citizenship status

6

motivated Irwin's disclosure, plaintiff has not stated a valid claim under the Privileges and Immunities Clause.[2]

## 2. Fourth Amendment claims (against DOC defendants)

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. A search occurs when the government unlawfully occupies private property for the purpose of obtaining information or when the government intrudes upon an individual's reasonable expectation of privacy. *See United States v. Stanley*, 753 F.3d 114, 118 (3d Cir. 2014) (citations omitted). Plaintiff has not shown that a search occurred because he consented to the presence of Flicker and Tigue on his property and because he protected his privacy interests by refusing to provide his cell phone records. A seizure occurs when the government physically restrains an individual or when an individual submits to a show of government authority. *See United States v. Jackson*, 575 F. App'x. 59, 62 (3d Cir. 2014) (citations omitted). Plaintiff has not shown that a seizure occurred because Flicker and Tigue did not restrain plaintiff's physical freedom and because plaintiff did not submit to the DOC investigators' request for records.

Instead, plaintiff argues that the DOC defendants violated the Fourth Amendment by "demand[ing] cell phone records when there was no legitimate basis for the request." (D.I. 1, ex. 1 at ¶ 51) This theory fails because "[e]ven when law enforcement officers have no basis for suspecting a particular individual, they may pose questions . . . provided they do not induce cooperation by coercive means." *United States v. Lockett*,

---

[2] The court notes that this claim would be similarly unsuccessful if evaluated as a claim under the Privileges or Immunities Clause of the Fourteenth Amendment, which protects from state intrusion only the rights associated with federal citizenship. *See McDonald v. City of Chicago*, 561 U.S. 742, 754-55 (2010).

7

406 F.3d 207, 211 (3d Cir. 2005) (citing *Florida v. Bostick*, 501 U.S. 429, 434-35 (1991)). While the DOC arguably used coercive means in demanding plaintiff's records, such means did not induce cooperation. Plaintiff succeeded in resisting the DOC's attempts to search or seize his records. Therefore, these claims are dismissed.

### 3. Presumption of innocence claims (against all defendants)

Plaintiff contends that Irwin and the DOC defendants deprived him of his fundamental right to be presumed innocent. The presumption of innocence, however, is not a general obligation of government but a "component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503 (1976). Because this case does not involve a criminal proceeding, these claims are dismissed.

### 4. Fourteenth Amendment claims (against all defendants)

The complaint states that defendants violated the Fourteenth Amendment by depriving plaintiff of due process of law.³ (D.I. 1, ex. 1 at ¶¶ 44, 52) While plaintiff has not specified whether defendants' conduct violates procedural or substantive due process, plaintiff did not challenge defendants' contention that the facts alleged do not support a procedural due process claim. The court agrees that the complaint invokes only substantive due process.

The Due Process Clause of the Fourteenth Amendment contains a substantive component that bars arbitrary, wrongful government action "regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). To set forth a substantive due process claim under 42 U.S.C. § 1983, a plaintiff

---

³ Plaintiff also asserts violation of his Fifth Amendment due process rights. However, the Fifth Amendment's due process guarantee is inapplicable against the DOC defendants because it applies only against federal actors. *See, e.g.*, *Freebery v. Coons*, 589 F. Supp. 2d 409, 415 (D. Del. 2008).

8

must assert a constitutionally protected liberty or property interest that has been interfered with by a defendant acting under the color of state law. *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972); *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592 (3d Cir. 1995); *C&C Const. Rehab. Specialists v. Wilmington Hous. Auth.*, 1996 WL 190011, at *2 (D. Del. March, 20 1996).

Assuming that plaintiff has a liberty or property interest in his employment with DOC,[4] he must demonstrate "a governmental action [that] was arbitrary, irrational, or tainted by improper motive," *Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d 118, 123 (3d Cir. 2000), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392, 400–01 (3d Cir. 2003) (quoting *Bello v. Walker*, 840 F.2d 1124, 1129 (3d Cir. 1988)), or that the government's conduct was so egregious that it "shocks the conscience," *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 401 (3d Cir. 2000) (quotations omitted). The "shocks the conscience" standard "is no calibrated yardstick," and thus conduct that "shocks in one environment may not be so patently egregious in another." *County of Sacramento v. Lewis,* 523 U.S. 833, 847, 850 (1998). "[C]onduct intended to injure in some way [and] unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 849.

---

[4] Although plaintiff has not specified whether his termination by DOC violated a liberty or property interest, the court is satisfied that plaintiff has a constitutionally-protected interest in his employment. The Third Circuit has held that there is a protected liberty interest associated with pursuing a calling or occupation, and doing so without undue and arbitrary governmental interference. *See Thomas v. Independence Township*, 463 F.3d 285, 297 (3d Cir. 2006). Additionally, the Delaware Merit Rules provide that state employees must be fired for cause. *See* Del. Code Ann. tit. 29, § 5930.

### a. Irwin's disclosure of the DOJ investigation

Plaintiff contends that Irwin deprived him of substantive due process by disclosing the DOJ investigation to the DOC. Plaintiff supports this claim by alleging that Irwin lacked a legitimate purpose for the disclosure and that Irwin misrepresented the status of the DOJ investigation as ongoing. According to the complaint, Irwin disclosed and misrepresented the DOJ investigation with the purpose of using the DOC's investigatory powers to supplement the DOJ investigation. Plaintiff has identified government conduct that he alleges was motivated by an improper purpose and that led to the deprivation of a constitutionally protected interest. Therefore, plaintiff states a claim under § 1983. Defendant's qualified immunity defense is not sufficient to dismiss this claim because plaintiff identified a violation of an established constitutional interest.

### b. Plaintiff's discipline and termination by the DOC

Plaintiff alleges that the DOC defendants deprived him of substantive due process because the DOC did not have a legitimate reason to conduct an investigation. DOC had full discretion to take action, however, for two reasons. First, the DOC is vested with investigative authority that does not depend upon the results of a prior law enforcement investigation. "Pursuant to 11 Del. C. § 6561(c)(1), any internal affairs investigator for the Department of Correction has the full power of a State police officer when acting in the scope of the investigator's duties." *Davis v. State*, 945 A.2d 1167 (Del. 2008). The mere fact that the DOJ investigated plaintiff was sufficient to justify the DOC's investigation.[5] Second, while plaintiff was not required to report the investigation

---

[5] The public's manifest interest in assuring that prison workers and administrators are free from involvement in crime themselves supports this dual investigation system. *See* Delaware Department of Correction, Policy Number 9.6, effective April 2, 2015,

under Policy Number 9.6, plaintiff was not excused from cooperating with the DOC investigation.[6] The DOC's decision to discipline and terminate plaintiff resulted from his failure to comply with the internal investigation. Plaintiff had notice of the internal investigation and was aware of the consequences of his refusal to cooperate. Accordingly, plaintiff's substantive due process claim with respect to the results of the DOC investigation is dismissed.

Consistent with the analysis above, the court denies defendants' motion to dismiss count I alleging constitutional violations against Irwin and grants defendants' motion to dismiss count II alleging constitutional violations against the DOC defendants. Plaintiff requested leave to amend his complaint to include the right to privacy as a grounds for recovery. (D.I. 4 at 4 n.1) The Supreme Court recently assumed without deciding that a "constitutional privacy 'interest in avoiding disclosure of personal matters'" exists, but that "whatever the scope of this interest, it does not prevent the Government from asking reasonable questions" of its employees. *Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. 134, 138, 147-48 (2011) (citation omitted). Plaintiff's request to amend is denied because the DOC's request for plaintiff's telephone records was not unreasonable in the context of a lawful internal investigation.

Plaintiff also requested leave to amend the 42 U.S.C. § 1983 claim generally if the court found the pleadings insufficient. The court finds that, in this instance, no

---

available at http://www.doc.delaware.gov/downloads/policies/policy_9-6.pdf ("Because criminal cases may be pled down, dismissed or defendants acquitted, whenever practical an internal investigation should be conducted, independent of the criminal action, to determine whether there is just cause for disciplinary action based on the event leading to the arrest or criminal charge.").

[6] Plaintiff was not required to report the encounter with Irwin to the DOC because Irwin did not inform plaintiff that he was under criminal investigation.

11

amount of generalized amendments will cure the deficiencies identified by the court. Plaintiff's request, therefore, is denied.

### B. Abuse of Process (Count IV)

"The elements a plaintiff must prove in an abuse of process claim in Delaware are: '(1) an improper or wrongful purpose in using legal process; and (2) a willful act in the use of the system not proper in the regular conduct of legal proceedings.'" *Adams v. Aidoo*, 2012 WL 1408878, at *13 (Del. Super. Mar. 29, 2012), *aff'd*, 58 A.3d 410 (Del. 2013) (citing Del. P.J.I. Civ. § 12.6; *Nix v. Sawyer*, 466 A.2d 407, 412 (Del. Super. 1983)). There can be no claim when defendants have not improperly initiated legal proceedings. *See Spence v. Spence*, 2012 WL 1495324, at *3 (Del. Super. Apr. 20, 2012) (explaining that abuse of process addresses "abusive litigation"). Plaintiff has not shown the existence of any legal proceedings. Instead, plaintiff claims that Irwin did not disclose the DOJ investigation using an official government procedure and that his collaboration with the DOC amounted to an abuse of process. Because the court has concluded that plaintiff failed to adequately allege facts showing defendants improperly initiated a judicial process, count IV alleging abuse of process must fail. Given that plaintiff's theory of this cause of action is wholly unrelated to judicial process, the court will not grant plaintiff's request to amend this claim.

### C. Defamation (Count V)

To state a cause of action for defamation under Delaware state law, a plaintiff must plead five elements: (1) the defamatory character of the communication; (2) publication; (3) that the communication refers to the plaintiff; (4) a third party's understanding of the communication's defamatory character; and (5) injury. *Wright v.*

*Pepsi Cola Co.*, 243 F. Supp. 2d 117, 124 (D. Del. 2003). Libel is written defamation and slander is oral defamation. *Stiner v. Univ. of Delaware*, 243 F. Supp. 2d 106, 115 (D. Del. 2003) (citing *Spence v. Funk*, 396 A.2d 967, 970 (Del. 1978)). Plaintiff claims slander based on Irwin's alleged communication to Drake and libel based on the purportedly inaccurate information in Irwin's crime report.

### 1. Slander

The complaint contains sufficient factual allegations, taken as true, to satisfy each element of plaintiff's slander claim. Plaintiff alleges that Irwin orally expressed to Drake defamatory views identifying plaintiff as the subject of an ongoing investigation into criminal activity. Drake's initiation of the DOC investigation shows that Drake understood the defamatory nature of the communication. Plaintiff's discipline and termination caused injury.[7]

Irwin contends that the statute of limitations has run for plaintiff's slander claim. Any action alleging slander or libel must be filed within two years from the date that the alleged defamatory statement is communicated to a third party. 10 Del. C. § 8119; *Read v. Baker*, 430 F.Supp. 472 (D. Del. 1977) (actions to recover damages for libel and slander are barred after expiration of two years from the date the alleged libelous statement was published or the slanderous statement made). The complaint was filed on October 9, 2014. (D.I. 1, ex. 1) Therefore, claims occurring prior to October 9, 2012

---

[7] Slander ordinarily requires a plaintiff to show special damages. *See Spanish Tiles, Ltd. v. Hensey*, 2005 WL 3981740, at *6 (Del. Super. Mar. 30, 2005). Statements that impute a crime are one of the categories of speech excepted from this general rule. *See id.* The court does not express an opinion as to whether Irwin's disclosure of an investigation imputed a crime because plaintiff has alleged that his discipline and termination were a direct result of Irwin's disclosure.

13

are barred by the applicable two-year limitations period unless a valid tolling doctrine applies.

"The Delaware courts recognize three doctrines that may toll the statute of limitations: (1) inherently unknowable injuries, (2) fraudulent concealment, and (3) equitable tolling." *Gregorovich v. E.I. du Pont de Nemours*, 602 F. Supp. 2d 511, 518-19 (D. Del. 2009) (citation and footnotes omitted). The doctrine of inherently unknowable injuries applies when a claim involves an "inherently unknowable" injury to a "blamelessly ignorant" plaintiff. *Morton v. Sky Nails*, 884 A.2d 480, 482 (Del. 2005). Once the doctrine is properly invoked,[8] a plaintiff bears the burden of showing that the statute was tolled, and relief from the statute extends only until the plaintiff is put on inquiry notice of the injury. *In re Tyson Foods, Inc.*, 919 A.2d 563, 585 (Del. Ch. 2007). A plaintiff is put on inquiry notice by "the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of such facts" that would alert plaintiff to the wrongful act and the injury. *Coleman v. Pricewaterhousecoopers, LLC*, 854 A.2d 838, 842 (Del. 2004) (citation and quotation omitted).

Irwin disclosed the DOJ investigation to the DOC on October 2, 2012. It is necessarily true that, prior to that date, no facts existed to put plaintiff on notice of the

---

[8] The court rejects Irwin's argument that this doctrine does not apply to defamation claims. *See Clark v. Delaware Psychiatric Ctr.*, 2011 WL 3762038, at *1 (Del. Super. Aug. 9, 2011) (dismissing a defamation claim in which the doctrine was discussed but was not dispositive); *see also Anderson v. Anderson-Harrison*, 2013 WL 4492797, at *4 (Del. Super. Aug. 15, 2013) (applying the doctrine to dismiss a claim for reputational damages and noting "parallels between plaintiff's suit and one for libel or slander").

14

injury because the injury had not occurred.[9] The complaint supports the plausible conclusion that Irwin's disclosure was unknowable to plaintiff for at least some period of time beyond October 2, 2012. The complaint also supports the conclusion that discovery of Irwin's disclosure might not have led to discovery of plaintiff's injury. Irwin threatened to disclose the investigation, but he did not threaten to misrepresent its status.[10] From the face of the complaint, therefore, the court cannot determine the date by which plaintiff was put on inquiry notice of his injury. Additional facts are required to determine the tolling period, if any, under the doctrine of inherently unknowable injuries. Accepting as true plaintiff's claim that he first became aware of Irwin's disclosure when the DOC investigators visited him on October 11, 2012, plaintiff has met the pleading standard to survive a motion to dismiss on statute of limitations grounds.[11] The court denies defendants' motion to dismiss count V with respect to the slander claim.[12]

---

[9] The court rejects Irwin's contention that his threat to disclose the investigation put plaintiff on inquiry notice on September 19, 2012. Before Irwin actually disclosed the investigation, the threat to disclose, if pursued, would not have led plaintiff to discover the allegedly defamatory statement. Put simply, Irwin's threat was merely a statement of intent, not a fact, prior to his disclosure on October 2, 2012.

[10] For this reason, plaintiff's failure to comply with the reporting requirement of Policy Number 9.6 does not render implausible the possibility that plaintiff was "blamelessly ignorant" of the defamatory content of Irwin's disclosure. The record must be further developed before the court can decide this question as a matter of law.

[11] A plaintiff is not required to plead sufficient facts so as to avoid an affirmative defense based on the statute of limitations. See Avenarius v. Eaton Corp., 898 F. Supp. 2d 729, 740 (D. Del. 2012). Defendants will still be able to present evidence of their affirmative defense after discovery or at trial to show that the statute of limitations should not be tolled. See Tyson, 919 A.2d at 591 (noting that "defendants [would] have the opportunity [at trial] to present evidence to show that plaintiffs were, in fact, on inquiry notice").

[12] Irwin's additional theories in support of dismissal are unavailing. First, Irwin's disclosure is not protected by a qualified privilege for communications between parties

15

### 2. Libel

Unlike Irwin's alleged misrepresentation to Drake, the crime report's inaccuracies, such as misstating the date that Irwin interviewed plaintiff, are not defamatory in character. The crime report does not imply criminal activity because it explicitly states that Irwin closed the DOJ investigation for lack of evidence. Even considering plaintiff's allegation that Irwin omitted several relevant facts from the crime report, the court finds the libel claim cannot be sustained when the information that Irwin did convey was not defamatory. The court grants defendants' motion to dismiss count V with respect to the libel claim.

### D. Breach of Implied Covenant of Good Faith and Fair Dealing (Count VI)

Under Delaware law, an implied duty of good faith and fair dealing is interwoven into every contract. See Anderson v. Wachovia Mortg. Corp., 497 F. Supp. 2d 572, 581 (D. Del. 2007). In general, the implied covenant requires "a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits" of the contract. Dunlap v. State Farm Fire & Cas. Co., 878 A.2d 434, 447 (Del. 2005) (citations omitted).

---

who have a common interest in the protection of a defamatory statement. See Pierce v. Burns, 185 A.2d 477, 479 (Del. 1962) (recognizing such a privilege). Plaintiff has alleged that Irwin misrepresented the status of the DOJ investigation, and Pierce does not apply to "a statement which the speaker knows is false." Id. Second, the Delaware State Tort Claims Act does not require dismissal. See 10 Del. C. § 4001. While the statute does protect state employees from "liability for acts done in good faith, without gross or wanton negligence and which arose out of and in connection with the performance of official discretionary duties," plaintiff has alleged both bad faith and gross negligence. Duffy v. Kent Cnty. Levy Court, Inc., 2011 WL 748487, at *6 (D. Del. Feb. 23, 2011).

16

None of the DOC defendants can plausibly be considered to be "a party in a contractual relationship" with plaintiff and, therefore, are not bound by any term of plaintiff's contract with DOC. Count VI is dismissed.

## V. CONCLUSION

For the aforementioned reasons, the court denies defendant's motion to dismiss with respect to the 42 U.S.C. § 1983 and slander claims against defendant Irwin. The court grants defendants' motion to dismiss the abuse of process and libel claims against defendant Irwin and the 42 U.S.C. § 1983 and breach of the implied covenant of good faith and fair dealing claims against the DOC defendants. An appropriate order shall issue.